**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

---

Civil Action No. 03-cv-2223-ABJ-BNB

BROADCAST INNOVATION, L.L.C., and IO RESEARCH PTY, LTD.,

        Plaintiffs and Counter-Defendants,

v.

CHARTER COMMUNICATIONS, INC.,

        Defendant and Counter-Plaintiff,

---

**ORDER GRANTING DEFENDANT'S MOTION FOR STAY
PENDING REEXAMINATION OF U.S. PATENT 6,076,094
BY UNITED STATES PATENT AND TRADEMARK OFFICE**

---

The above-captioned matter comes before the Court on Defendant Charter Communications, Inc.'s Motion to Stay Pending Reexamination of the U.S. Patent 6,076,094 By United States Patent and Trademark Office. Plaintiffs Broadcast Innovation, LLC and IO Research Pty, Ltd. have resisted this motion, timely filing a response on June 29, 2006. After careful consideration of the motion, briefs and governing authorities, and being otherwise fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

## Background

### I.    Procedural History

In this patent infringement and validity action, Plaintiffs Broadcast Innovation, LLC and IO Research Pty, Ltd. (hereinafter "Plaintiffs") allege that Charter Communications, Inc.

(hereinafter "Charter") infringed directly or indirectly claims 8, 15, 22, 29 of United States

Patent No. 6,076,094 (hereinafter "'094 patent"), a patent Charter claims is invalid for

numerous reasons, not the least of which being anticipation and obviousness based on prior

art.[1]  The '094 patent claims a complex distributed database system with applicability to data

broadcasting and data casting communications media.[2]

On June 8, 2006, Charter requested that the United States Patent and Trademark

Office (PTO) reexamine the '094 patent to determine whether the four asserted claims in the

present case—claims 8, 15, 22 and 29—are invalid.  The information provided to the PTO

as a basis for reexamination includes, among other materials, three prior art references that

form the basis of Charter's summary judgment motion before this Court: (1) the 1989 World

System Teletext and Data Broadcasting Technical Specification; (2) a 1986 article entitled

"*BBC Datacast – A New Generation of Data Transmission Networks Using Broadcast

Video*"; and (3) a 1988 article authored by John Lilley entitled "*Can Data Broadcasting

Actually Sell Itself?*"  It is undisputed that this art was not before the PTO during its original

examination of the application that eventually issued the '094 patent.  Unsurprisingly,

Charter asks this Court to stay the case awaiting the fully-informed, expert view of the PTO.

---

[1]  The Court also notes that Charter has joined in and adopted a host of pleadings filed both in the present action and in the case of *Broadcast Innovation, L.L.C. v. Echostar Communication Corp.*, 01-cv-2201-ABJ-BNB (D. Colo), a case also involving the '094 patent which has been stayed pending final resolution of the present case.

[2]  The Court eschews an exhaustive recitation of the adjudicative facts surrounding the merits of this case, focusing instead on the posture of the present motion and response.

## II.     Patent Reexamination

### A.     Overview

Reexamination is a procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U.S. patent.  35 U.S.C. § 302.  A request for patent reexamination must be based upon prior art patents or publications which raise "a substantial new question of patentability."  *Id.* § 303(a).  Typically, the cited prior art patents or printed publications upon which such a request is based were not considered by the patent examiner during the processing of the patent application that resulted in the patent-in-suit.  Once a reexamination request is granted, a patent examiner who is familiar with the technology involved with the patent conducts the reexamination.  The examiner is obligated to do so "with special dispatch."  35 U.S.C. § 305; 37 C.F.R. § 1.550(a).

Within approximately three months of the filing of the reexamination petition, the PTO will determine whether the request raises a "substantial new question of patentability" affecting any claim or claims of the patent.  *Kaufman Co. v. Lantech Inc.*, 807 F.2d 970, 976 (Fed. Cir. 1986).  The examiner, utilizing his expertise, determines if such a "new question" exists by comparing the prior art of record in the original patent application with the prior art cited in the request for reexamination (although the examiner is not limited to that information).  35 U.S.C. § 303(a).  If the prior art patents and/or printed publications are "material" to the reexamination of at least one claim of the patent, a substantial new question

of patentability exists.[3]   Thereafter, the parties are given the opportunity to provide position statements to the PTO, and the PTO reexamines the patent claims in *ex parte* fashion.  If the Commissioner decides *not* to institute a reexamination proceeding, the decision is final and nonappealable.

Importantly, a decision by the Patent Office that the reexamined claims of an issued patent are canceled as unpatentable renders the claims unenforceable in the pending litigation and in any future disputes.  35 U.S.C. § 307(a).  Cancellation through reexamination, however, is available only when the claims at issue are unpatentable over prior art patents and publications.  35 U.S.C. §§ 301-02.  Although not binding, a decision by the PTO upholding the validity of reexamined patent claims is strong evidence that a district court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence.  *Custom Accessories, Inc. v. Jeffery-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 1986).  After a decision sustaining the validity of the claims, this burden becomes more difficult to satisfy.  *Id.*[4]

---

[3]  The materiality standard is fairly deferential to the PTO.  Prior art is "material" to the examination of a claim of the patent if "there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication *important* in deciding whether or not the claim is patentable."  UNITED STATES PATENT AND TRADEMARK OFFICE, *Manual of Patent Examination Procedure* § 2294 (8th ed., rev. 1, October 2005) (emphasis added).

[4]  Relevant are the Federal Circuit's comments in *American Hoist v. Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984):

> [I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa,

During the course of a stay, the court retains jurisdiction to respond to changing factual circumstances with appropriate orders.  Thus, if a stay is granted prior to the decision from the Patent Office as to whether a substantial new question of patentability exists, the court can issue an order lifting the stay upon a negative determination, thereafter deciding all pending motions and, if necessary, proceeding to trial.  *See, e.g.*, *Grayling Indus. v. GPAC Inc.*, 19 U.S.P.Q.2d 1872, 1874 (N.D. Ga. 1991); *Brown v. Shimano American Corp.*, 18 U.S.P.Q.2d 1496, 1496 (C.D. Cal. 1991).  Similarly, the court may dissolve the stay when preliminary reports from the Patent Office reveal that some of the claims at issue will survive reexamination.  The court would then await the PTO's decision for guidance on pending motions and, if necessary, trial.  *See, e.g.*, *Purolite Int'l, Ltd. v. Rohm and Haas Co.*, 24 U.S.P.Q.2d 1857, 1860 (E.D. Pa. 1992); *Rohm and Haas Co. v. Brotech Corp.*, 24 U.S.P.Q.2d 1369, 1372 (D. Del. 1992).  If no claims survive, neither does the court's work.

**B.    Scope and Purpose:  Expertise**

"Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO.  Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's

---

its burden of proof of unpatentability has become *more difficult* to sustain—a fact likewise to be taken into account by the trial judge.

*Id.* at 1354.

specialized expertise to reduce costly and timely litigation." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (citing H.R. REP. No. 1307, 96th Cong., 2d Sess., pt. 7 at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460)); *see also* Wayne O. Stacy, *Reexamination Reality: How Courts Should Approach A Motion to Stay Litigation Pending the Outcome of Reexamination*, 66 GEO. WASH. L. REV. 172, 172 (1997) ("Congress decided that the often-asserted validity issue, which can involve intricate technological questions, deserved special treatment. Thus, Congress established a patent reexamination procedure that allows the Patent and Trademark Office, instead of a district court, to consider validity issues that the PTO overlooked during the initial examination.").

Shifting the patent validity issue to the PTO has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination many encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987).

Early drafts of the reexamination statute expressly provided for a stay of court proceedings during all reexamination proceedings.  *See* S. REP. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. REP. 5075, 96th Cong., 1st Sess. § 310 (1979); S. REP. 2446, 96th Cong., 2d Sess. § 310 (1980).  However, an express provision was ultimately deemed unnecessary because courts already had the power to stay civil actions "to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983).[5]  "When a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved." *Id.*  To no surprise, courts frequently note that "[t]he legislative history surrounding the establishment of the reexamination proceeding evinces congressional approval of district courts liberally granting stays." *Robert H. Harris Co. v. Metal Mfg. Co.*, 19 U.S.P.Q.2d 1786, 1788 (E.D. Ark. 1991).

---

[5]  The pertinent House report explained as follows:

The bill [35 U.S.C. §§ 301-07] does not provide for a stay of court proceedings.  It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.

H.R. REP. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463).

### C.      Relevant Factors Weighing For Or Against A Stay

"A motion to stay an action pending the resolution of a reexamination proceeding in the United States Patent and Trademark Office is directed to the sound discretion of the court." *Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*, 1997 WL 94237 (D. Kan. 1997); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted).  As mentioned above, there exists a "liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *Whatley v. Nike*, 54 U.S.P.Q.2d 1124, 1125 (D. Or. 2000); *see also In re Laughlin Products, Inc.*, 265 F. Supp. 2d 525, 530 (E.D. Pa. 2003) (same).

"In deciding whether to grant a stay, the court must weight the benefits of the stay against the costs." *Motson v. Franklin Covey Co.*, 2005 WL 3465664, *1 (D.N.J. 2005). Courts consider a number of factors in determining whether to stay litigation pending PTO reexamination, including:  (1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date has been set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) "whether a stay will reduce the burden of litigation on the parties and on the court." *Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004); *Nexmed Holdings, Inc. v. Block Inv., Inc.*, 2006 WL 149044, *1

8

(D. Utah Jan. 19, 2006) (citing *In re Laughlin Prods.*, 265 F. Supp. 2d at 530); *Brown*, 18

U.S.P.Q.2d at 1496 (detailing the expertise factor).[6]   No one factor is controlling—the

totality of the circumstances governs.

### Analysis

### I.      Will A Stay Simplify the Issues Before the Court?

Courts routinely consider the expertise of the Patent Office, under which claim

validity will be rigorously reevaluated, as an important factor in determining whether to stay

its proceedings. *Accord Gould*, 705 F.3d at 1342; *Middleton, Inc. v. Minn. Mining & Mfg.

Co.*, 2004 WL 198669, at *3 (S.D. Iowa 2004); *GPAC Inc. v. D.W.W.Enter. Inc.*, 23

U.S.P.Q.2d 1129, 1134 (D.N.J. 1992); *see also Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914

F. Supp. 951, 953 (W.D.N.Y. 1996) ("Because the PTO is considered to have expertise in

deciding issues of patentability[,] many courts have preferred to postpone making final

decisions on infringement until the PTO rules on issues before it.").   The technical nature of

the patent claims in question increases the utility of PTO expertise, which is further amplified

by the need to examine prior art and publications not before the PTO during its original

patent examination. *See Brown*, 18 U.S.P.Q.2d at 1496 ("[R]eexamination by the PTO when

---

[6] While the *Tap Pharmaceuticals* court created a fourth category examining the "burden of litigation on the parties and on the court," see 70 U.S.P.Q.2d at 1320, most courts merge this inquiry with the "simplification of issues" factor. *Accord Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999) (collecting cases); *Versa Corp. v. Ag-Bag Intern. Ltd.*, 2001 WL 34046241, *1 (D. Or. 2001) (describing this factor as "the orderly course of justice measured in terms of the *simplifying or complicating of issues*, proof, and questions of law which could be expected to result from a stay") (emphasis added).

issues relevant to prior art are involved is especially helpful given the PTO's expertise.").

In turn, patent cases *not* hinging upon the consequences of prior art references have less of

a need for the PTO's expertise. *See Emhart Indus., Inc.*, 3 U.S.P.Q.2d at 1892 n.3

(distinguishing the matter before it on such grounds, explaining that if "the issue of prior art

was involved, the PTO's opinion [would] be invaluable.") (quotation omitted).

Confronted with a motion to stay pending PTO reexamination after significant

discovery, pretrial conference and trial dates set, a neighboring district court concluded as

follows:

> The technical expertise provided by the reexamination proceeding . . . will be
> extremely helpful to this Court should further consideration of this matter be
> necessary.   Indeed, the Court invites a final determination by the PTO as to
> the validity of plaintiff's patent claims.   The reexamination procedure has the
> potential to eliminate trial on the issue of patent infringement, should all of the
> patent's claims be cancelled.   It is equally possible for all of the claims in
> plaintiff's patent to be upheld, or to be narrowed in some degree.   In any event,
> the expert view of the Patent Office examiner will certainly benefit this Court.
> Thus, the Court is of the opinion that a stay of the trial of this matter should be
> granted to allow the PTO to complete the reexamination proceeding.

*Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886, 887 (W.D. Okla. 1985)
(staying trial pending conclusion of the reexamination proceedings).[7]

Indeed, some courts consider this factor of primary importance.   *See, e.g.*, *Dresser Indus.,*

*Inc. v. Ford Motor Co.*, 530  F. Supp. 309, 316 (N.D. Tex. 1981) ("The major benefit of

---

[7] Also interesting to note is that the patent at issue in *Loffland* appears quite simple when
compared to the '094 patent presently before the Court—the technology in *Loffland* consisted of
patent covering an elevating catwalk used on drilling rigs. *See Loffland Bros.*, 225 U.S.P.Q. at 886.

staying litigation pending reconsideration of a patent under [reexamination] is that it affords the Court the assistance of the Patent Office's specialized expertise on technical questions of validity."); *cf. Pegasus Development Corp. v. Directv, Inc.*, 2003 WL 21105073, *2 (D. Del. 2003) (deciding that by staying a highly technical case involving computer programming communication systems, "the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency").

The *Loffland Bros.* court also understood the PTO's expertise to have benefits beyond educating the court.   That is, simplification may occur by the very nature of the reexamination procedure itself, as claims, arguments and defenses can be narrowed or entirely disposed of, preserving the resources of the parties and the court.   The Federal Circuit has explained that a major "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceedings)." *Gould*, 705 F.2d at 1342 (Markey, C.J.); *see also Canady*, 271 F. Supp. 2d at 68 ("[C]ourts often stay proceedings, such as in the instant case, to wait for reexamination results that will simplify litigation by eliminating, clarifying, or limiting the claims.").   "If not found invalid, the reexamination will at least likely result in a narrowing and simplifying of the issues before the Court." *Middleton, Inc.*, 2004 WL 1968669 at *3.   "This is because the scope of the patent claims, which the PTO may narrow or otherwise limit, controls the outcome of any subsequent infringement analysis." *Id.*; *see also, e.g., Allen Eng'g Corp. v.*

*Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002).

Combining these benefits, countless courts have touted the value of streamlining voluminous and complicated patent cases. For example, the court in *Motson* found that the benefits derived from the PTO's reexamination outweighed the fact that much effort had already been expended by the parties:

> [E]ntry of a stay, pending reexamination by the PTO, may simplify or even eliminate the need for trial on the remaining validity challenge in this matter. The reexamination procedure has the potential to either uphold or narrow the claims in the plaintiff's patent. In any event, the technical expertise of the PTO examiner may be helpful to the Court should further consideration of the matter be necessary after reexamination. . . . Although discovery and briefing expenses have already been incurred, a trial at this point on the sole remaining issue in the case may compound those costs unnecessarily if the PTO reexamination eliminates the need for a trial or creates a need to relitigate other issues.

*Motson*, 2005 WL 3465664 at *1-2.

Despite being less than two-and-a-half months from trial and despite the substantial monetary expenditures by each party, the court in *Gioello Enterprises* provided a similar explanation for granting a stay:

> Presently, this case is scheduled for trial on April 13, 2001. According to the PTO's order granting the request for reexamination, it is possible that submission of statements will not be complete until April 12, 2001. Additionally, the outstanding motions for summary judgment by Mattel claim invalidity and non-infringement—two issues the PTO's decision could render moot. Since the court must decide the summary judgment motions well in advance of trial, it would have to address the arguments raised before the PTO. Such a situation raises resource questions.

*Gioello Enterprises, Ltd.*, 2001 WL 125340 at *1.

This question of "resources" was detailed by the Southern District of New York in *Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d 1633 (S.D.N.Y. 2000), a case bearing many resemblances to the matter *sub judice*. There, the court addressed a stay pending PTO reexamination of allegedly relevant prior art. While the motion was brought by the *plaintiff* in that case, the instructiveness of the court's language applies equally to the present matter:

> Although [defendant] correctly notes that plaintiffs have not acted with dispatch in seeking reexamination and that plaintiffs have pursued an extremely burdensome discovery program, the cost to [defendant] of the litigation to date will not be affected by the grant or denial of a stay; denying the stay will not, without more, entitle [defendant] to recover fees it has already spent litigating this case. In addition, if the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.

> Second, although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served . . . and the Pretrial Order has not yet been prepared. I[t] would be a serious waste of both the parties' and the Court's resources if the . . . summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

> Third, a stay will necessarily simplify the issues. If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims.

*Softview Computer Prods. Corp.*, 56 U.S.P.Q.2d at 1636; *see also Bausch & Lomb Inc.*, 914 F. Supp. at 953 ("If this Court were to deny the stay and proceed to trial, it is possible that the time, resources, and significant efforts of all those involved in such a trial would be wasted. Because a finding by this Court that the '607 patent is not invalid would not bind the PTO, the PTO could reach the opposite conclusion at any time thereafter. Not only would such a scenario cause Alcon significant harm[,] but it also would be a tremendous waste of the time and resources of all those involved in a trial before me. Such an outcome is unacceptable. Because the reexamination is to be conducted "with special dispatch" (35 U.S.C. § 305), I find that a stay of the proceedings before me will not greatly prejudice any party and will serve to promote judicial economy.").

In the present matter, Charter argues that a stay "will simplify the issues, avoid inconsistent rulings and conserve the resources of the Court and the parties." *Defendant's Motion*, at 7. Broadcast and IO Research, on the other hand, summarily state that the possibility of simplification is "equivocal." *Plaintiff's Response*, at 3. For the reasons detailed above as well as those to follow, the Court finds that this factor weighs heavily in favor of granting a stay.

The heart of this complicated patent case involves the impact of several prior art references—an issue the PTO is far better suited to address given the technology at issue in this case. *Ethicon, Inc.*, 849 F.2d at 1427. Moreover, because this prior art was not before the PTO during its original patent examination, the Court would benefit immensely from the PTO analysis of it. *Accord Softview Computer Prods. Corp.*, 56 U.S.P.Q.2d at 1636; *Emhart Indus., Inc.*, 3 U.S.P.Q.2d at 1890, 1892 n.3; *Indust Wireless Spectrum Techs., Inc. v. Motorola Corp.*, 57 U.S.P.Q.2d 1662, 1663 (N.D. Ill. 2001); *Brown*, 18 U.S.P.Q.2d at 1496

(noting that "[t]he PTO is in a better position than the Court to evaluate the validity of the patent [at issue] in view of the prior art references.").

Judged solely by this factor, a stay would further the interests of judicial economy and the conservation of the parties' resources, as well as that of the court.  Charter's pending reexamination petition involves the same issues currently before this Court.  If the PTO, utilizing its unique expertise, determines that all or some of the '094 claims are invalid, that determination will either dispose of this litigation entirely or at least aid the Court in adjudicating this case.  *See In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) ("A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.").  Moreover, "[s]ince the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict." *Gioello Enterprises, Ltd.*, 2001 WL 125340 at *2; *see also Bayer AG v. Novartis Crop Prot. Inc.*, 55 U.S.P.Q.2d 1509, 1511 (M.D. La. 2000) (holding that simultaneous litigation of patent issues "would create an economic hardship on the parties and also result in the ineffective administration of justice"); *Hewlett-Packard Co. v. Acuson Corp.*, 1993 WL 149994, *2 (N.D. Cal. 1993) ("Ordinarily, courts need not expend unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers."); *Childers*

*Foods, Inc. v. Rockingham Poultry Mktg. Co-op., Inc.*, 203 F. Supp. 794, 796 (D. Va. 1962)

(noting that simultaneous proceedings in federal district court and the PTO are "wasteful and

extravagant" where issues to be decided are very similar). The Court, unlike the PTO, can

exercise its direction to avoid this conflict and potential for waste.[8]

## II.   Time and Timing

Broadcast and IO Research argue that this factor "is decidedly pro-Plaintiffs," as

"[t]rial is less than three months away. *Plaintiffs' Response*, at 5.[9]  Charter acknowledges

the trial setting, but insists that the proximity of trial, standing alone, is not a reason to blindly

deny an otherwise appropriate stay.

This factor, at first glance, likely weighs in favor of the Plaintiffs and thus against a

stay. Although discovery is not complete, see *Stipulation Regarding Additional Discovery*

at 2, a trial date has been set for September 11, 2006. If these two litigation aspects were all

that courts considered when assessing this factor, it might lean towards Broadcast and IO

Research. However, courts considering this factor do not stop at discovery and trial settings,

but rather, routinely inquire as to the occurrence summary judgment arguments, rulings on

---

[8]  The Court is also cognizant of the fact that the PTO grants more than nine of every ten petitions for reexamination. *See* UNITED STATES PATENT AND TRADEMARK OFFICE, *Ex Parte Reexamination Filing Data*, at 1, ¶ 5 (Sept. 30, 2005) (noting 91% acceptance out of 7,510 requests). If and when the PTO grants Charter's petition, history also teaches that there is a 74% likelihood that the PTO will eliminate, amend or otherwise limit the claims at issue, which will significantly alter the nature and amount of work for the attorneys, the court and the jury. *See id.* at 2, ¶ 9; *Tap Pharm. Prods. Inc.*, 70 U.S.P.Q.2d at 1320.

[9]  Indeed, Plaintiffs' entire argument regarding this factor consists of that single statement.

summary judgment, and the status of the final pretrial order, among other elements.  *See, e.g.,* *Gioello Enterprises, Ltd.*, 2001 WL 125340 at *1 (noting trial was set, but expressing concern for pending summary judgment motions); *Softview Computer Prods. Corp.*, 56 U.S.P.Q.2d at 1636 (same concern as to "extremely voluminous summary judgment motions" and unfinished final pretrial order); *Bausch & Lomb Inc.*, 914 F. Supp. at 953 (same); *Middleton, Inc.*, 2004 WL 198669 at *4 (same).

In sum, the proximity of the trial date does not preclude entry of a stay.  "Courts have granted stays even where discovery has been completed, and even when a trial date has been scheduled or is forthcoming." *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc.*, 68 U.S.P.Q.2d 1755, 1757 (E.D. Mich. 2003); *see also Perricone v. Unimed Nutritional Services, Inc.*, 2002 WL 31075868, *3 (D. Conn. 2002) (noting that courts "have granted stays pending re-examination proceedings notwithstanding the well-developed posture of the litigation").  For every court that yields to completed discovery and a looming trial date, another court finds these dates outweighed by other factors—be it the complexity of the suit, the value of PTO expertise, simplification of the issues, lack of hardship to the nonmovant, or the overall burden of duplicitous litigation on the parties and on the court.  Put simply, trial time doesn't always tell the tale.  *See, e.g., Gould,* 705 F.2d at 1342 (order granting motion to stay proceedings five years into litigation and twenty days before scheduled trial date); *Middleton, Inc.*, 2004 WL 198669 at *10 (granting motion to stay proceedings eight years after start of litigation and less than two months before trial);

*Loffland Bros.*, 225 U.S.P.Q. at 887 (order granting motion to stay proceedings after significant discovery, rulings on dispositive motions, pretrial conference and setting of initial trial date); *see also Softview Computer Prods. Corp.*, 56 U.S.P.Q.2d at 1636 (granting stay; noting that "although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial. Discovery is not yet completed, extremely voluminous summary judgment motions have been served . . . and the Pretrial Order has not yet been prepared."); *Robert H. Harris Co.*, 19 U.S.P.Q.2d at 1789 (granting stay despite the fact that case was set for trial in less than a month); *Motson*, 2005 WL 3465664 at *2 (granting stay despite discovery being complete and summary judgment decided).[10]

In the present case, although trial is set for mid-September, significant work remains for the parties and the Court. First, numerous voluminous dispositive motions are pending, including, but not limited to, Broadcast and IO Research's motion for summary judgment of

---

[10]   A more detailed balancing process was explained by the court in *Ralph Gonnocci Revocable Living Trust*, who ultimately ruled in favor of a stay:

> Undoubtably the parties have spent considerable time and resources thus far— substantial discovery has been conducted and the parties have submitted witness lists and three lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Two responses to motions for summary judgment must be submitted, the Court has not begun to review those motions, and much remains to be done by the parties and the Court to prepare this case for trial.

*Id.* at 1758.

infringement, Charter's motion for summary judgment of non-infringement and Charter's motion for summary judgment of invalidity.  Furthermore, the parties have recently stipulated to additional discovery, including supplemental document production, supplemental responses to written discovery, supplemental expert reports, rebuttal expert reports, and expert depositions related to those supplemental expert reports.  *Stipulation Regarding Discovery And Expert Report Supplementation*, at 2 (filed June 22, 2006).  According to this stipulation, the parties hope to conclude this work in late August.  *Id.*[11]   In addition to preparing their final pretrial memorandums and other trial presentations, numerous pretrial filings remain for both parties, including submission of deposition designations, oppositions to more than forty motions *in limine* (according to Charter, and not disputed by Broadcast or IO Research), as well as proposed jury instructions and special verdict forms.   Charter argues that

> Neither the Court nor the parties should expend additional resources when it is uncertain which, if any, of the four asserted claims will survive the reexamination process.  The reexamination proceedings before the PTO may well [alter], moot or resolve the issues set for trial in less than three months, and staying the trial pending conclusion of the PTO's review will eliminate the . . . additional expense of trial preparation [and the] risk of inconsistent rulings.

*Defendant's Motion*, at 13.

---

[11]   To this end, the Court fails to see the significance of Plaintiffs' argument that *Charter* acted as the initiator of the stipulation, for the fact remains that *both* parties stipulated to additional discovery.

The Court agrees. *See Tap Pharm. Prods. Inc.*, 70 U.S.P.Q.2d at 1320 (noting similarly, i.e., "There is a significant chance that the PTO will either invalidate this patent or drastically decrease its scope. This creates a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings. Simplification of the issues will allow both parties to conserve time and resources."). A more detailed glance at the timing factor reveals, beyond any peradventure of doubt, that a stay is appropriate in this case.

### III. Will A Stay Unduly Prejudice the Nonmoving Party or Present a Clear Tactical Advantage for the Moving Party?

This factor is best summarized by one question: *do the Plaintiffs have an adequate remedy at law*? Because they do, this factor weighs heavily in favor or staying the case. The Plaintiffs seek *only* monetary damages and for that reason, have an adequate remedy at law should they prevail on the merits. *See, e.g.*, *Robert H. Harris Co.*, 19 U.S.P.Q.2d at 1788.

Plaintiffs make the vague argument that a delay in trial is unfair. However, this argument fails to address the crucial question of the prejudice factor—i.e., will a stay unduly prejudice the legal remedy sought by the nonmovants? *Softview Computer Prods. Corp.*, 56 U.S.P.Q.2d at 1636; *Ingro v. Tyco Indus., Inc.*, 227 U.S.P.Q. 69, 70 (N.D. Ill. 1985). Clearly it will not. If the PTO does not invalidate or otherwise alter the claims of the '094 patent, the Plaintiffs' legal remedy remains unaffected, and they will have over a decade to

exploit the '094 patent.  Moreover, if the claims are narrowed, *both* sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial.  Finally, if the claims are strengthened, the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase.  *See, e.g.*, *Motson*, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.'") (quoting *Pegasus Dev. Corp.*, 2003 WL 21105073 at *2).  Indeed, the only possibility of irreparable harm to Broadcast and IO Research would exist if the Court chose *not* to stay the case.  That is, if the Court finds that the '094 patent is valid and that Charter has infringed it, and orders Charter to pay damages to Broadcast and IO Research, then Broadcast and IO Research "would have no ability to recover those damages if at a later date the PTO determine[s] that the ['094] patent is invalid."  *Bausch & Lomb Inc.*, 914 F. Supp. at 952.  The Court finds such a possibility unacceptable.

In sum, this factor weighs in favor staying the case because monetary relief—the only relief Plaintiffs seek—is fully capable of restoring Plaintiffs to the *status quo ante*.  *Accord Brown*, 18 U.S.P.Q.2d at 1496 ("While the Court recognizes that the reexamination could cause significant delay in the proceedings, the complexity of the case and the fact that Mr. Brown can be fully compensated should he prevail at the reexamination and trial support

staying this action.").[12]

## IV.   Conclusion

A future trial date, standing alone, does not obviate otherwise unassailable reasons to stay these proceedings.  At the very least, awaiting outcome of reexamination will facilitate motion disposition and trial, as valuable efficiencies will be gained by awaiting the input of the PTO on the scope of the claims in light of the prior art that will be considered during the reexamination proceedings.

The Court's decision mirrors, in many respects, that made in *Middleton* by the Honorable James E. Gritzner of the United States District Court for the Southern District of Iowa.  By the time Judge Gritzner ruled on the defendant's motion to stay, the "long and convoluted" case before him was eight years old—"proceeding from the United States District Court for the Northern District of Illinois to the Federal Circuit and back multiple times." *Middleton, Inc.*, 2004 WL 1968669 at *1.  Like this Court, Judge Gritzner was faced with the choice of ruling on numerous motions for summary judgment—in fact, three motions presenting legal questions nearly identical to the motions presently before this Court—or

---

[12]   Moreover, a stay would not affect the issue of damages accruing during the pendency of the reexamination period should Plaintiffs ultimately prevail at trial.  The Federal Circuit has considered the impact of a completed reexamination upon the viability of infringement claims relating to the reexamined patent. *See, e.g.*, *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998).  The general rule is that the owner of a reexamined patent "is entitled to infringement damages, *inter alia*, for the period between the date of issuance of the original claims and the date of issuance of the reexamined claims if the original and reexamined claims are 'identical.'" *Id.* (citing 35 U.S.C. §§ 252 and 307(b); *Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413, 1417, (Fed. Cir.1989)).

staying the case pending PTO reexamination. *Id.* The case was set for trial in less than two months. *Id.* The plaintiff in *Middleton*—much like Broadcast and IO Research—resisted the motion to stay "based primarily on the short time left before trial and the delay in seeking reconsideration." *Id.* Judge Gritzner's thorough and thoughtful explanation warrants repeating:

> In the present case, the litigation has been ongoing for over eight years. The trial date is set and is scheduled for the week of October 12, 2004 [i.e., less than two months away]. In addition, several motions for summary judgment remain pending that may be dispositive of some or all of the issues remaining in the case. Discovery is completed, and the parties are most likely well into their trial preparation. Thus, the parties have already spent a considerable amount of time and money on the pending litigation. On its face, these facts seem to weigh against granting a stay.

> However, these facts should be weighed against the benefits of issuing a stay. As argued by [the defendant], the following factors weigh in favor of issuing a stay: (1) a stay will be the most efficient use of judicial resources by preventing duplication of effort; (2) the reexamination may simplify and narrow the issues in the case; and (3) the Court will be able to benefit from the expertise of the PTO. Moreover, a stay issued pending reexamination "is not for such a protracted or indefinite period" as reexamination proceedings are to "'be conducted with special dispatch.'" *Gould*, 705 F.2d at 1341 (quoting 35 U.S.C. § 305). Thus, while some courts have denied a stay based on the end of discovery and the proximity of trial, *see Toro Co.* [*v. L.R. Nelson Corp.*], 223 U.S.P.Q. [636,] 638 [(C.D. Ill. 1984)]; the ultimate determination is within the Court's discretion based on a weighing of the benefits of issuing a stay versus any added expenses resulting from the stay.

> In the present action, the Court finds the element of judicial economy does in fact weigh in favor of granting the motion to stay. First, a stay would preserve the costs of a trial on the merits that may be obviated by the results of the reexamination. Second, even if a trial is ultimately required, the Court can have all issues heard in one trial on the proper scope of the patent claims. In

addition to limiting the issues at trial, the reexamination decision may also limit the issues in the currently pending dispositive motions. Finally, the Court will be able to use the expertise of the PTO in making further determinations as related to the proper patent claims. In that regard, the Court is influenced by the breadth of the reexamination and the number of prior art references under active review.

The Court acknowledges the considerable expense already endured by the parties in the present action but notes that these costs will not be recouped by denying a stay and proceeding to a trial. This may actually compound the parties' expenses if some or all of the issues need to be retried later as a result of the reexamination. In addition, the Court disagrees with [Plaintiff's] contention that only incremental resources will be expended if the action proceeds to trial. It is simply not efficient to rule on three motions for summary judgment, complete pretrial, and hold a full jury trial if all or part have to be redone. The apparent scope of the reexamination, the technical expertise of the PTO, and the relationship to the issues in this case suggest to the Court a great likelihood that the continuing work of this Court would be impacted by the reexamination. The judicial efforts that a stay would preserve outweigh any additional cost in staying the proceedings even at this late juncture.

*Id.* at *5-6.

This Court finishes where the Southern District of Iowa did two short years ago.

24

Accordingly, and for the foregoing reasons, it is hereby

**ORDERED** that Defendant Charter Communications, Inc.'s Motion to Stay Pending Reexamination of the U.S. Patent 6,076,094 By United States Patent and Trademark Office shall be, and now is, **GRANTED**.  It is further

**ORDERED** that the proceedings in the above-captioned case are **STAYED** from the date of this Order until further notice.  It is further

**ORDERED** that the parties shall immediately advise the Court of the PTO's decision to grant or deny Defendant's petition for reexamination of the '094 patent, this Court continuing or lifting the present stay pending that initial determination.  It is further

**ORDERED** that the parties shall advise the Court of any final decision that results from the PTO's reexamination of the '094 patent.

Dated this _  11th  _ day of July, 2006.

_____  _____

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION

25